ALAN DABDOUB
LYNN PINKER HURST & SCHWEGMANN LLP
2100 ROSS AVENUE, SUITE 2700
DALLAS, TEXAS 75201

HUDSON M. JOBE
JOBE LAW PLLC
6060 NORTH CENTRAL EXPRESSWAY,
SUITE 500
DALLAS, TEXAS 75206

SPECIAL COUNSEL TO THE TRUSTEE

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 7** |
| **MCCLAIN FEED YARD, INC.,** | § | |
| **MCCLAIN FARMS, INC., and** | § | **CASE NO. 23-20084-SWE** |
| **7M CATTLE FEEDERS, INC.** | § | |
| | § | |
| **DEBTORS** [1] | § | **JOINTLY ADMINISTERED** |

| | | |
|---|---|---|
| **KENT RIES, CHAPTER 7** | § | |
| **TRUSTEE FOR THE** | § | |
| **BANKRUPTCY ESTATES OF** | § | |
| **MCCLAIN FEED YARD, INC.,** | § | |
| **MCCLAIN FARMS, INC., and 7M** | § | |
| **CATTLE FEEDERS, INC.** | § | |
| | § | **ADV. PRO. NO. 25-02003-SWE** |
| **PLAINTIFF** | § | |
| **V.** | § | **Honorable Scott W. Everett** |
| | § | |
| **ANGELA ROBINSON et al** | § | |
| | § | |
| **DEFENDANTS** | § | |

**RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**
**BASED ON FED. R. CIV. P. 4(M)**

---

[1] The Debtors in these jointly administered cases are: (1) McClain Feed Yard, Inc. (Case No. 23-20084); (2) McClain Farms, Inc., (Case No. 23-20885); and (3) 7M Cattle Feeders, Inc. (Case No. 23-20886). All three cases are being jointly administered under the case number for McClain Feed Yard, Inc.

COMES NOW Kent Ries, the Chapter 7 Trustee of the bankruptcy estates of McClain Feed Yard, Inc. (Case No. 23-20084-SWE), McClain Farms, Inc. (Case No. 23-20085-SWE), and 7M Cattle Feeders, Inc. (Case No. 23-20086-SWE) and Plaintiff herein (the "Trustee"), and objects and responds to Defendant Keith Harris Farms Inc.'s Motion to Dismiss (ECF No. 70); Defendants Tyler Puttman, Puttman Farms, Keith Myers, Caleb Little and J&S Investments' Motion to Dismiss (ECF No. 71); Defendants Rick Rodgers, Mykel Tidwell, John Tidwell, Eric DeJarnett, Brent Burnett, Joe Burnett, Cory Jesko, Jeff Jesko, Dwight Jesko, and Patricia Jesko's Motion to Dismiss (ECF No. 72); Defendants Thomas Frith and TGF Ranch, LLC's Motion to Dismiss (ECF No. 73); Defendants Stanley Ayers and Garwood Cattle Company, LLC's Motion to Dismiss (ECF No. 85); Defendant Reinert Hay & Commodities, LLC; and Defendant Patrick Baker's Motion to Dismiss (ECF No. 96) ("collectively, the "**Motions**"),[2] and in support hereof shows as follows:

## I.   **INTRODUCTION**

The Moving Defendants seek dismissal of the Trustee's claims against them pursuant to Federal Rule of Civil Procedure 4(m), on the basis that they were not formally served within 90-days of the filing of the Trustee's Original Complaint. Rule 4(m), however, provides two options for the Court when service is not effected within 90 days: the Court can grant dismissal *without* prejudice or the Court can extend the time period in which service is to be accomplished. Fed. R. Civ. P. 4(m). In light of the negative consequences that would flow not to the Trustee, but to innocent creditors, favors the Court extending the time period for service rather than granting dismissal.

Dismissal is all the more improper in this case because the brief, two-month delay in effecting service on the Moving Defendants does not justify dismissal in this case because such dismissal would effectively be with prejudice. The two-year time-period in which the Trustee can assert avoidance claims under the Bankruptcy Code has since passed, and the Moving Defendants would argue that a second lawsuit is barred. In these circumstances, Fifth Circuit precedent demands more than a short,

---

[2] Keith Harris Farms, Inc., Tyler Puttman, Puttman Farms, Keith Myers, Caleb Little, J&S Investments, Rick Rodgers, Mykel Tidwell, John Tidwell, Eric DeJarnett, Brent Burnett, Joe Burnett, Cory Jesko, Jeff Jesko, Dwight Jesko, Patricia Jesko, Thomas Frith, TGF Ranch, LLC, Stanley Ayers, Garwood Cattle Company, LLC, and Reinert Hay & Commodities, LLC are hereinafter collectively referred to as the "Moving Defendants."

60-day delay. Rather, the delay or period of inactivity must be extensive <u>and</u> lesser sanctions than dismissal must be unavailable. Still, that alone does not suffice. The Fifth Circuit also requires the presence of aggravating circumstances, such as the plaintiff rather than counsel being the cause of the delay, prejudice caused to defendants by the delay, or intentional misconduct by counsel that caused the delay. Not a single one of these elements, required to support what could effectively be dismissal with prejudice in this case, are present here. To the contrary, there has only been a brief, two-month delay, which corresponds to the approximate delay between when the Trustee requested summons from the Court and the Court responded to the request. Accordingly, Fifth Circuit precedent does not support dismissal in this case, and the Court should deny the Moving Defendants' Motions.

## II.   BACKGROUND

### A. THE PRE-LAWSUIT CIRCUMSTANCES, RULE 2004 DISCOVERY DISPUTES, AND THE PARTIES NON-COMPLIANCE WITH DISCOVERY ORDERS NECESSITATED EXTENSIVE PRE-SUIT WORK BY THE TRUSTEE AND DELAY IN THE LAWSUIT.

1.      This case has presented several challenges for the Trustee relevant to the timing of the filing of the instant adversary proceeding, the information known on the relevant parties, and the circumstances surrounding the timing of summons and service.  As set forth in the Ries Declaration attached as Exhibit A, the Debtors' bankruptcy cases were filed on April 28, 2023 (the "Petition Date") by petitions signed by Glenn Karlburg, Chief Restructuring Officer.[3] Mr. Karlburg had only been retained on April 7, 2023, shortly before the Debtors' principal, Brian McClain, committed suicide on April 18, 2023.  Following his death but before the Petition Date, Mr. Karlburg apparently authorized all of the Debtors' physical and electronic records to be transferred to an outside financial consultant (Focus Management Group) working with the Debtors' secured lender (Rabo AgriFinance LLC) in Chicago.  Further, Mr. Karlburg was based out of Arizona and there were no other known day-to-day former employees of the Debtors with knowledge of the daily business operations and record keeping, other than Mr. McClain, then deceased, and his daughters. As a result, at the beginning of these bankruptcy cases, the Trustee

---

[3] *See e.g.,* ECF No. 1, Case No. 23-20084; ECF No. 1, Case No. 23-20085; ECF No. 1, Case No. 23-20086.

did not have instant access to usable Debtor records and current arms-length employees with historical knowledge of the Debtors' business and its records.  As a result, the Trustee has had to obtain knowledge of the Debtors' transactions through pursuing turnover of records and conversations with parties and their counsel.

2.      The Trustee was able to obtain the Debtors' records from Focus during the summer of 2023. Those records were ultimately shown to be in generally poor condition, incomplete, unreliable, and insufficient to allow the Trustee to understand in detail the Debtors' pre-bankruptcy transactions and business dealings.

3.      Further complicating the initial circumstances of the case, over 100 parties filed claims with the United States Department of Agriculture against the Debtors exceeding 120 million dollars under a very new statute – the USDA Dealer Trust Act.[4] Attached to the Ries Declaration is the analysis provided by the USDA reflecting $2,687,968.77 of apparently valid claims and $119,338,263.86 of apparently non-valid claims. Those claimants have taken the position in this case that, among other things, all cash on hand of the Trustee at the beginning of the case represents the proceeds of cattle and therefore trust funds that are outside the property of the Debtors' bankruptcy cases and payable only to those claimants.[5]

4.      In the fall of 2023, the Trustee began pursuing significant discovery to obtain further knowledge of the Debtors' pre-bankruptcy transactions, including from many of the Movants. This discovery has included production of records and information from the over 100 parties that filed USDA claims,[6] from documents produced to other parties in the bankruptcy cases,[7] life insurance companies,[8] other parties that filed Proofs of Claim,[9] and various banks, accountants, and buyers and brokers of cattle that were believed to have done business with the Debtors.[10]

---

[4] *See* ECF No. 126, Case No. 23-20084. Many of these parties also filed claims in the Debtors' bankruptcy cases.
[5] *See* ECF Nos. 135 and 136, Case No. 23-20084.
[6] *See* ECF No. 174, Case No. 23-20084.
[7] *See* ECF No. 176, Case No. 23-20084.
[8] *See* ECF No. 178, Case No. 23-20084.
[9] *See* ECF No. 179, Case No. 23-20084.
[10] *See* ECF No. 237, Case No. 23-0084.

5.      Of particulate note, the Trustee's discovery on parties that filed USDA claims and Proofs of Claim sought all documents concerning all transactions with the Debtors, including communications, and the preparation of a single interrogatory summarizing all of the party's transfers to and from the Debtors.[11] Those parties heavily resisted that discovery.[12] In response, the Trustee further briefed his need for the discovery, including laying out in detail the alleged *Ponzi-scheme* nature of the Debtors' business and the potential avoidance claims.[13] The Court held a contested, evidentiary hearing on March 18, 2024.[14] Judge Jones in turn issued a written opinion on the requested discovery on April 19, 2024, and found that, among other things, "[t]he Trustee's testimony . . . revealed that the Debtors' record keeping, or lack thereof, creates a need for documents to establish the financial history of the Debtors and to identify invoices and contracts related to transfers to and from the Debtors."[15] The Court further overruled the parties' objections to the time scope of the requests and other limitations, and ordered the production of all records concerning their transactions with the Debtors and communications concerning such transfers, and responses to the Trustee's interrogatory[16] subject to certain rights under Federal Rule of Civil Procedure 33(d).[17]

6.      The Trustee expended considerable effort to obtain Judge Jones' ordered production from over 100 parties, which included: (i) creating a public website with the discovery orders available to view online (ii) creating separate upload links for each of the claimants to use to submit their documents to the Trustee; and (iii) sending hundreds of separate emails and certified letters to the

---

[11] *See* ECF No. 174, Case No. 23-20084.
[12] *See* ECF Nos. 185-190, Case No. 23-20084.
[13] *See* ECF No. 195, Case No. 23-20084.
[14] *See* ECF No. 198, Case No. 23-20084.
[15] *See* ECF No. 223, Case No. 23-20084.
[16] *Id.  See also*, ECF Nos. 233 and 234, Case No. 23-20084.
[17] Federal Rule of Civil Procedure 33(d) provides:
> (d) Option to Produce Business Records. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

claimants.  The Trustee utilized the names, address, email addresses, and attorney associations known at that time based upon the USDA claims, Proofs of Claim, and filings in the Debtors' bankruptcy cases to assemble the contact list.

7.      Specifically, the Trustee sent separate emails to each claimant with known email addresses and/or counsel on May 22, 2024, with the information on the Order and a separate upload link for the production of documents.  A representative email is attached as Exhibit "B" hereto, and the list of email addresses used to communicate with the parties and/or their attorneys is attached as Exhibit "C" hereto.

8.      A follow-up email was sent to parties and counsel on May 29, 2024. An exemplar of this email is attached as Exhibit "D" hereto.  A third follow-up email was sent to counsel on May, 31, 2024. Exhibit "E" is a representative example of this email.

9.      In addition to email, the Trustee sent letters to counsel on May, 22, 2024, with this same information, and certified letters to parties on May 21 and 22, 2024. Exhibit "F" hereto is a sample of the letter sent to counsel listed in Exhibit "G" hereto. Exhibits "H" and "I" hereto are examples of the certified letters sent to the parties listed in Exhibits "J" and "K" hereto.

10.      Many of the parties (even those represented by counsel) failed to comply with Judge Jones' order – some partially, and others entirely.

11.      With respect to the Moving Defendants: Brent Burnett, Joe Burnett, John Tidell, Mykell Tidwell, Eric Dejarnett, TGF Ranch,[18] Rick Rodgers, Dwight Jescko,[19] Stanley Ayers, and Garwood Cattle Company were each specifically named in the discovery orders, included in the Trustees communications efforts, and produced **zero** documents in response.[20] Keith Harris provided certain banking records, but not bank statements confirming the relevant payors and payees on the account, or communications.

---

[18] Tom Frith, another of the Moving Defendants, was not expressly subject to the discovery order, but his related entity TGF Ranch was expressly named.
[19] Dwight Jescko's wife, Patricia, was not expressly named in the discovery order, but her husband was named. Neither produced records.
[20] *See* Declaration of Rick Cass at ¶ 5.

12.    Notwithstanding the non-compliance by half of the Moving Defendants and other parties with the Court's prior Rule 2004 discovery orders, a material number of documents was produced, a summary of which is set forth in Exhibit "L" hereto. Notably, the 12 parties highlighted in yellow are the only parties believed to have produced all records responsive to the Court-ordered discovery. The 36 parties highlighted in green in Exhibit "L" have failed to produce any records or only produced records relating to the transactions included in their claims. And the 67 parties highlighted in orange produced records for more than just the transactions included in their claims but appear likely to have additional responsive records that were not produced.[21]

13.    With respect to banking records, the Trustee has sought and been provided with certain banking records from the Debtors' depository banks, Mechanics Bank ("Mechanics") and Community Financial Services Bank ("CFSB"). A listing of the parties with whom the Debtors transacted, the total number of transactions between them, and the total amount exchanged with the Debtors is attached as Exhibit "M" hereto.

14.    As indicated by Exhibit "M," the Debtors' banking data is beyond voluminous—for an approximate 4-year period, it includes at least 2,119 different payors and payees, 28,167 debit entries, 10,808 credit entries, and $4,366,325,711.32 of dollar volume activity. Given the lack of production by the vast majority of the claimants, including many of the Movants, the Trustee's knowledge of the Debtors' pre-bankruptcy transactions and possible avoidance claims required a considerable forensic accounting effort that was made more cumbersome and required more time to complete due to the lack of reliable Debtor records and claimants' non-compliance with the Court's discovery orders and failure to produce transactional and banking records. The claimants resistance and litigated opposition to the Trustee's discovery efforts further delayed the Trustee's ability to ascertain the Debtors' potential avoidance claims and, ultimately, the Trustee's filing of this lawsuit.

---

[21] *See* Declaration of Rick Cass at ¶ 6.

**B.  THE TRUSTEE FILES TWO LAWSUITS IN MARCH 2025.**

15.    Following the extensive work the Trustee had to perform to trace and understand 40,000 transactions between more than 2,100 parties, the Trustee now believes that the Debtors' cattle operations were largely a massive *Ponzi* and check kiting scheme that involved a large secured creditor and line of credit, three depository banks used to improperly kite checks and float funds, outside accountants that facilitated the fraud, and passive investors with different degrees of "innocence."

16.    Though the Trustee's investigation and review of the Debtors' transactions remains ongoing still today in light of the gaps in discovery that remain due to claimants' (and the Bank Defendants') non-compliance with the Court's discovery orders, the two-year period in which the Trustee may assert claims on the Debtors' behalf was approaching an end. As such, the Trustee prepared and filed two adversary proceedings in March 2025 based on the information he had already gleaned.

17.    The Trustee filed his Original Complaint in this adversary proceeding, to claw back fraudulent transfers and preferential payments from investors, insiders, and vendors, on March 2, 2025, asserting claims against 136 individual defendants.

18.    The Trustee's Original Complaint in his second adversary proceeding, against the four banks primarily involved in McClain's schemes, *i.e.*, CFSB, Mechanics, HTLF Bank ("HTLF"), and Rabo AgriFinance, LLC ("Rabo") (collectively, the "Bank Defendants"), was filed on March 14, 2025.[22]

19.    In addition to the significant activities in these cases following their commencement, the Trustee and his counsel also had to attend to numerous related litigations, including: (i) the investors multiple lawsuits against various of the Bank Defendants (ultimately consolidated into adversary proceeding no. 24-02007) and Rabo's adversary proceeding against certain investors and business partners of the Debtors related to their USDA Dealer Trust claims (adversary proceeding no. 23-02005).

---

[22] *See* ECF No. 1, Case No. 25-02005.

20.     Specifically, since March 2, 2025, when the Trustee's Original Complaint was filed, the Trustee and/or his counsel have undertaken a significant number of activities related to this proceeding specifically and the bankruptcy related litigation more generally.

## C. THE TRUSTEE'S COUNSEL WAS NOT INACTIVE PRIOR TO SERVING THE MOVING DEFENDANTS.

21.     The Trustee and his counsel did not ignore this lawsuit once filed. To the contrary, there was a significant amount of activity in the interim between the filing and service of the complaint on the Moving Defendants.

### 1)  The Trustee took significant steps specifically to arrange for service or the waiver of service.

22.     First, the same day this adversary proceeding was filed, the Trustee immediately engaged the various attorneys who were representing the claimants sued in this case in related matters. As of the filing of the lawsuit, there were approximately 8 attorney groups known to be representing the various claimants: David Lebas,[23] Steve Hoard,[24] Kenneth Netardus,[25] Kyle Weldon,[26] John Massouh,[27] Whit Davis,[28] Amber Miller,[29] and Jeff Prostok, [30] as well as another counsel, Marcus Herbert, representing certain McClain family members.[31] The Trustee emailed counsel to alert them of the filing of the Trustee's Original Complaint and invite discussions and arrangements on service:[32]

---

[23] *See* ECF No. 185, Case No. 23-20084.
[24] *See* ECF Nos. 188-89, Case No. 23-20084.
[25] *See* ECF No. 152, Case No. 23-20084.
[26] *See* Docket No. 58, Case No. 23-20084.
[27] *See* Docket No. 13, Case No. 23-20084.  As discussed herein, Massouh has represented the largest number of parties and those parties have continually expanded. *Compare id.,* Exhibit 1 to Docket No. 186, Case No. 23-20084, and Docket No. 52, Adversary No. 25-02003.
[28] *See* Docket No. 104, Case No. 23-20084.
[29] *See* Docket No. 187, Case No. 23- 20084.
[30] *See* Docket No. 290, Case No. 23-20084.
[31] *See* Docket Nos. 54, 212, and 213, Case No. 23-20084.
[32] The Trustee's counsel's March 2, 2025 emails to claimants' counsel are attached as Exhibit "N" hereto.



23.     In addition to this opening email to counsel, the Trustee's counsel took significant steps to attempt to arrange for waivers of service or, in the absence thereof, the orderly service of summons on 149 separate defendants. Specifically, the Trustee's counsel took the following actions pertaining to service.

24.     **Communications with the Court:** The Trustee's counsel corresponded with the Court's courtroom deputy regarding the issuance of summons, ***requesting summons be issued on***

***May 2 and 5, 2025***, though no summons were issued at that time. More broadly, counsel's communications with the court regarding summons are as follows::

- On March 3, 2025, counsel emailed Judge Jones' courtroom deputy, requesting that the Court wait to issue summons on all 136 defendants because (i) he expected to reach agreement on waiving service for some defendants, and (ii) the Trustee was still working to confirm service addresses for some of the defendants. Counsel indicated he would check in the following week with an update on service.[33]

- On March 11, 2025, the courtroom deputy emailed Mr. Jobe to request an update. Mr. Jobe replied the following day that he was working on agreements to waive service for approximately half of the defendants, and further, the Trustee was anticipating filing an amended complaint, and so he advised the court to continue holding off on issuing summons.[34]

- On April 1, 2025, the case was transferred from Judge Jones' court to this Court.

- The Trustee identified a few inaccuracies in the names of a few defendants and identified additional claims.  On April 25, 2025, the Trustee filed his First Amended Complaint.[35]

- On May 2, 2025, Mr. Jobe emailed this Court's courtroom deputy to inform her that summons had not previously issued when the case was in Judge Jones' court; that he was still working to obtain waivers of service from certain parties; and to request that summons be issued for four defendants: Crystal, Chelsea, Piper, and Kristin McClain.[36]

- On May 5, 2025, Mr. Jobe again emailed the Court's courtroom deputy to request summons be issued for 46 defendants, **__including for 13 of the 22 Moving Defendants__**: Bettye Butler, Billy Butler, Bravo Golf Aviation LLC, ***Brent Burnett***, ***Caleb Little***, Chelsea McClain, Codie Perry, Colton Scott Long, Crystal McClain, Dannie Winfrey, Diamond B Productions LLC, Drake Cattle Company, ***Eric Dejarnatt***, Ernest Gard, Gale Force Quarter Horses, Heartland Coop, Jared Grell, ***Joe Burnett***, Joel Lesh***, John Tidwell***, Jones Family Cattle, Joshua Ray Drake, Kingdom Trust Company, Kristin McClain, Michael Cooper, ***Mykell Tidwell***, Nathan Michael Hoyle, ***Patricia Jesko***, ***Patrick Baker***, Perez Livestock, LLC, Piper McClain, ***Pittman Farms***, Ralph Reisz, ***Reinert Hay Co.***, ***Rick Rodgers***, Roger Welch, Rose Valley Ranch, Scott Skinner, ***Stanley Keith Myers***, Tommy Manion Ranch, Inc., ***Tyler Pittman***, Veronica Reisz, Vet Industries Feed & Supply, White Energy, William Weddington, and WJ Performance Horses. Mr. Jobe further asked if she could relay the request that the summons be issued for these parties or to let him know who else to contact.[37]

---

[33] Exhibit "O."

[34] Exhibit "O."

[35] A redlined copy of the Trustee's First Amended Complaint is attached as Exhibit "P" hereto.

[36] Exhibit "Q."

[37] *Id.*

- Mr. Jobe did not receive a response to these emails until July 2, 2025, which was after the 90-day service period under Federal Rule 4(m) expired on May 31, 2025.

- On July 2, 2025, the Court's courtroom deputy emailed Mr. Jobe, informing him that she had been out of office for several months and asking whether any summons were still needed and whether a scheduling order needed to be entered. Mr. Jobe replied the same day, stating there were a fair amount of summons that needed to be addressed and that he would follow up.[38]

- Thereafter, counsel reviewed records, contacted parties, and compiled an organized list of the defendants, grouping them together to the extent represented by the same counsel, to reduce the burden on the Court of preparing 149 separate summons. On July 28, 2025, the courtroom deputy emailed Mr. Jobe to remind him he was to provide a list of the parties still needing summons to be issued,[39] and the next day Mr. Jobe replied with the grouped list and suggestions on how to group and issue summons by counsel. [40]

- From July 30 – August 6, 2025, Mr. Jobe exchanged a series of emails with the courtroom deputy to finalize the issuance of all summons.[41]

25.    **Communications with Counsel:** The Trustee's counsel's service-specific activities do not end there. Rather, the Trustee's counsel engaged in repeated correspondence with counsel for the defendants in the related litigation matters to confirm party representations in this proceeding and obtain waivers of service. Specifically, the Trustee's counsel took the following steps in that regard:

- On April 30, 2025, Mr. Jobe emailed Messrs. Lebas, Weldon, Massouh, Johnston, Pridmore, Davis, and Prostok, as well as Ms. Miller, a copy of the Trustee's First Amended Complaint, asking them to confirm who they represented and whether their clients would waive service.[42]

- On May 2, 2025, Mr. Jobe emailed Mr. Massouh to confirm whether he was representing four additional parties beyond those he already confirmed as clients.[43]

- On May 5, 2025, Mr. Jobe email Mr. Massouh again, stating he was planning to serve parties who had not agreed to waive service by the end of the week.[44]

- On May 15, 2025, Mr. Jobe emailed additional attorneys whose clients in related matters were also named as defendants in this proceeding, again attaching a copy of the First

---

[38] Exhibit "R."
[39] Exhibit "S."
[40] Exhibit "Q."
[41] Exhibit "T."
[42] Exhibit "U."
[43] Exhibit "V."
[44] Exhibit "V."

Amended Complaint, requesting a waiver of service, and proposing mutual discovery and settlement discussions. Specifically, Mr. Jobe emailed the following attorneys: A.J. Singleton, Tom Blankenship, David Kelly, Stephen Barnes, and Marcus Herbert.[45]

- On May 15, 2025, Mr. Jobe likewise emailed **Steve Hoard** a copy of the First Amended Complaint and asked for a waiver of service from Mr. Hoard's clients and proposing mutual discovery and settlement discussions. Mr. Jobe also asked Mr. Hoard to confirm specifically whether he was representing a list of enumerated defendants and to further confirm whether he was representing "any other parties." That same day, Mr. Hoard confirmed he was representing the defendants enumerated in the email, that he could accept service for them, and requesting to speak with Mr. Jobe the following week.[46]

- On May 16, 2025, A.J. Singleton replied to Mr. Jobe's May 15, 2025, copying and introducing his partner, Adam Back. Mr. Back later emailed to confirm that they would be representing **Stanley Ayers** but would not be representing **Thomas Firth** or **TGF Ranch** for purposes of this proceeding. Mr. Back emailed again later that day to confirm they were also representing **Garwood Cattle Company** in this proceeding and inviting Mr. Jobe to send draft stipulations to waive service.[47]

- On May 19, 2025, Mr. Hoard emailed Mr. Jobe to request a call the following day and to inform Mr. Jobe that he was "contacted by another defendant – **Keith Harris**" and wanted to "talk about Mr. Harris's situation," as well as his other clients. Mr. Jobe and Mr. Hoard spoke via Microsoft Teams the following day.[48]

- On August 1, 2025, Mr. Jobe's associate, Mr. Berryman, emailed Mr. Hoard, explaining the courtroom deputy was out and had recently returned and issued summonses. Mr. Berryman inquired whether Mr. Hoard's clients would waive service and attached a draft stipulation to that effect. On August 4, 2025, Mr. Berryman again emailed Mr. Hoard regarding whether his clients agreed to waive service. On August 5, 2025, Mr. Hoard confirmed that some his clients agreed to waive service, but that Keith Harris had not.[49]

26.     As reflected above, 13 of the Moving Defendants were specifically included in Mr. Jobe's May 5, 2025 request to the Court to issue summons: Brent Burnett, Caleb Little, Eric Dejarnatt, Joe Burnett, John Tidwell, Mykell Tidwell, Patricia Jesko, Patrick Baker, Pittman Farms, Reinert Hay Co., Rick Rodgers, Stanley Keith Myers, and Tyler Pittman. Mr. Pittman is related to yet another of the Moving Defendants, Pittman Farms, and is linked to still another Moving Defendant, J&S

---

[45] Exhibit "W."
[46] Exhibit "X."
[47] Exhibit "Y."
[48] Exhibit "Z."
[49] Exhibit "AA."

Investments.[50] And another four of the Moving Defendants, Stanley Ayers, Garwood Cattle Co., Thomas Firth, and TGF Ranch, knew or should have known of the Trustee's claims against them by approximately May 15, 2025—within the initial 90-day service period—by virtue of Mr. Jobe sending the complaint to their counsel, Messrs. Back and Singleton, in related litigation (two of whom, Garwood Cattle and Stanley Ayers, are also represented by the same counsel in this proceeding). In other words, the Trustee's counsel has been actively seeking to serve the complaint or obtain waivers of service since its filing.

> **2) In addition to service-related activities, the Trustee's counsel performed still other activities as part of this case leading up to the issuance of summons.**

27.    The Trustee did not file his Original Complaint and then sit on it. Rather, in addition to the service-specific activities enumerated above, the Trustee's counsel and other parties were also active within the litigation itself. Specifically, these additional activities included:

- On March 6, 2025, Messrs. Dabdoub, Campbell, Fozouni, and Plemons, filed notices of appearances as counsel for the Trustee, (ECF Nos. 4-7).

- On March 6, 2025, Mr. Ries also filed a notice of appearance on behalf of himself, (ECF No. 8).

- On April 1, 2025, this case was reassigned from Judge Jones to this Court.

- On April 25, 2025, after learning that certain defendants had been misidentified in the original complaint and identifying additional claims against new parties, the Trustee filed his First Amended Complaint, correcting the names of 11 defendants and adding 15 more, which would have necessitated the issuance of new summons for the corrected and new parties had summons been issued previously, (ECF No. 9).

- On April 30, 2025, counsel for four defendants (Angela, Terry and Rebecca Robinson and 2B Farms) and the Trustee executed and filed a stipulation in which those defendants waived service, (ECF No. 11).

- On May 2, 2025, counsel for 9 more defendants (Scott Steward, Big Seven Capital Partners, LC, Carraway Cattle, LLC, Richard Carraway, Robert Carraway, Ridgefield Capital Asset Management, L.P., Robert Ellis, Elizabeth Ellis, and the Robert & Elizabeth

---

[50] Mr. Pittman made a number of payments with a Mr. Justin Puckett listed on the checks. Mr. Puckett is a member of J&S Investments. Thus, it is likely that J&S Investments had notice of this lawsuit prior to being served.

Ellis Family Foundation) and the Trustee executed and filed a stipulation in which those defendants waived service, (ECF No. 12).

- On May 8, 2025, the Trustee dismissed Robert Stewart from this lawsuit, (ECF No. 13).

- On May 13, 2025, the Trustee dismissed Scott Stewart from this lawsuit, (ECF No. 14).

- On May 15, 2025, in response to the request of the Court's clerk the day prior, filed a corrected notice of dismissal of Scott Steward, (ECF Nos. 15-16).

- On June 9, 2025, Mr. Gersten filed an appearance as counsel for the Trustee, (ECF No. 20).

- On June 30, 2025, Defendant Philip Rapp d/b/a Rapp Ranch, filed an answer to the Trustee's First Amended Complaint, (ECF No. 22).

28.     As the above litigation activities and service-specific correspondence demonstrates, the Trustee was not passive or inactive following the filing of his Original Complaint. To the contrary, the Trustee and his counsel were actively seeking to advance this case. At the same time, the Trustee and his counsel were also prosecuting and participating in multiple related proceedings.

**3) The Trustee's counsel was also actively litigating other related, multiple-party cases between March and July 2025.**

29.     In addition to the activities the Trustee's counsel engaged to further this adversary proceeding, the Trustee and his counsel were also busy attending to related litigation as part of the Debtors' bankruptcy cases while waiting for summons to issue. These litigation activities, involving the same parties and counsel, all blurred together, serving to distract focus from the service deadline in this adversary proceeding.

30.     Specifically, the following activities occurred in the Trustee's lawsuit against the Bank Defendants between March 14, 2025, when that case was filed, and July 31, 2025, when the Court began issuing summons.

- On March 20, 21, 25, and 27, 2025, counsel to the Trustee, CFSB, HTLF, Rabo, and Mechanics executed stipulations to waive service, (ECF Nos. 9-12, Case No. 25-02005).

- On April 1, 2025, the proceeding was transferred to this Court.

- On April 9, 2025, after being unable to mutually agree to a revised scheduling order with counsel for the Bank Defendants, the Trustee filed a request for a status conference to address the then-pending July 21, 2025 trial setting, (ECF No. 14, No. 25-02005).

- On May 2, 2025, the Court denied the Trustee's request for a status conference, encouraging the parties to continue to negotiate toward an agreed schedule, (ECF No. 15, No. 25-02005).

- On May 19, 2025, CFSB filed its motion to dismiss the Trustee's original complaint, as well as its 64-page brief in support, (ECF Nos. 21-22, No. 25-02005).

- On May 23, 2025, HTLF filed its motion to dismiss and brief in support, (ECF Nos. 23-24, No. 25-02005).

- On May 27, 2025, Rabo filed its motion to dismiss, 50-page brief in support, and supporting appendix, (ECF Nos. 25-27, No. 25-02005).

- On May 30, 2025, Mechanics filed its motion to dismiss and brief in support, (ECF Nos. 30-31, No. 25-02005).

- On June 4, 2025, the Trustee filed his unopposed motion to extend the deadlines to respond to the Bank Defendants' four motions to dismiss, (ECF No. 34, No. 25-02005)

- On June 9, 2025, Messrs. Gersten and Fozouni filed notices of appearance on behalf of the Trustee, (ECF Nos. 35-36, No. 25-02005).

- On June 16, 2025, the Trustee filed his First Amended Complaint, as well as a notice of mootness and objection to CFSB's motion to dismiss, addressing the merits thereof, (ECF Nos. 39-40, No. 25-02005).

- On June 17, after realizing the notice of mootness and objection had been misfiled, the Trustee filed his notice of withdrawal of ECF No. 40 and refiled the correct document, (ECF Nos. 41-42, No. 25-02005).

- On July 2, 2025, the Trustee filed his Second Amended Complaint, as well as three notices of mootness and objections and briefs in response to HTLF's, Mechanics', and Rabo's motions to dismiss, (ECF Nos. 48-51, No. 25-02005).

- On July 10, 2025, the Trustee filed a motion for entry of a scheduling order after further conferrals regarding an agreed schedule failed to achieve consensus, (ECF No. 53, No. 25-02005).

- On July 16, 24, and 31, 2025, CFSB, Mechanics, HTLF, and Rabo filed their respective motions to dismiss the Trustee's Second Amended Complaint, (ECF Nos.56-57, 66-67, 70-71, and 73-75, No. 25-02005).

31.    As reflected above, the Trustee's counsel necessarily expended tens, if not hundreds, of hours to respond the Bank Defendants' motions to dismiss by both twice amending the Trustee's complaint to incorporate a significant amount of new allegations and information, substantively briefing responses to the Bank Defendant's initial motions to dismiss, and preparing to brief and address the Bank Defendants' motions to dismiss the Trustee's second amended complaint.

32.    In addition to the Trustee's lawsuit against the Bank Defendants, the Trustee was also actively litigating as an intervenor in the lawsuits between the Bank Defendants and the investors. Specifically:

- On May 29, 2025, the Trustee filed his second Motion to Intervene and Motion to Enforce Automatic Stay in adversary proceeding no. 24-02007, (ECF No. 140, Case No. 24-02007). The Motion was noticed for hearing on June 30, 2025, ECF No. 141, No. 24-02007).

- On June 5, 2025, Mechanics and Rabo filed joinders to the Trustee's motion to intervene, (ECF Nos. 147 and 155, No. 24-02007).

- On June 9, 2025, the investor-plaintiffs filed an emergency motion to continue the hearings on various motions to dismiss filed against them, which were also set for hearing on June 30, 2025 (ECF No. 160, No. 24-02007).

- On June 10-11, 2025, various parties filed joinders or objections to the emergency motion to continue the June 30 hearing, (ECF Nos. 164-67, No. 24-02007).

- On June 12, 2025, the Court held a hearing on the emergency motion to continue the June 30, 2025, hearing and granted the motion, postponing the June 30 hearing as to all motions, including the Trustee's motion to intervene.

- Following numerous parties' filing additional briefs in response to the Trustee's motion to intervene, the Trustee filed his reply in support of his motion on July 14, 2025, (ECF No. 192, No. 24-02007). Additionally, at the Court's urging, the parties held numerous conferrals in the days leading up to the hearing to attempt to negotiate an agreeable resolution to the Trustee's motion, (ECF No. 193, No. 24-02007).

- In addition to conferring with counsel and drafting the Trustee's reply brief, the Trustee's counsel also spent significant time preparing for the hearing on his motion to intervene, which was held on July 17, 2025. The Court granted the Trustee's motion to intervene and partially granted the remainder of the Trustee's motion, denying the remainder without prejudice pending repleading.

- On July 28, 2025, the Court held a status conference, in which he ordered the Trustee's lawsuit against the Bank Defendants be consolidated with the proceeding in which the Trustee had just intervened, (ECF No. 202, No. 24-02007).

33.     The combined workload across all of the related litigation matters for which the Trustee has retained counsel was demonstrably significant during the entire period between March 2, 2025, when the Trustee first commenced this adversary proceeding, and July 31, 2025, when the Court issued summons. Ultimately, and unfortunately, the combined workload on just the Debtors' litigation matters, and engaging in substantive litigation with the same parties and same counsel across multiple cases, blurred the lines and obscured the outstanding need to ensure all parties in this proceeding had waived service or been formally served by May 31, 2025.

34.     Despite this oversight, the above activities reflect that the failure to effect service on the Moving Defendants in this case was not the result of apathy or indifference. To the contrary, significant time and effort was expended attempting to arrange for service and to, at the same time, advance the litigation.

35.     Furthermore, to address the workload burden and ensure nothing else slips through the cracks in the future, the Trustee's counsel has added additional attorneys from Lynn, Pinker, Hurst & Schwegmann to the team to avoid any similar issues in the future.

## III.    <u>ARGUMENT</u>

36.     The Moving Defendants are effectively asking the Court to grant them preferential, disparate treatment compared to similarly situated defendants, which will reduce the funds available for distribution to innocent creditors. The Moving Defendants seek this outcome based solely on a two-month delay in receiving formal service. Such a result is squarely in conflict with the policies and goals of the Bankruptcy Code, which is the equitable and just administration of the estate.

37.     Critically, the Moving Defendants' requested relief is also in conflict with Fifth Circuit precedent governing dismissals under Federal Rule 4(m). Federal Rule 4(m) provides for dismissal *without* prejudice in the event that service has not been accomplished in a timely manner. Fed. R. Civ. P. 4(m). Here, however, any dismissal could effectively be *with* prejudice given that the two-year period

for preference and fraudulent transfer claims expired on April 28, 2025. *See* 11 U.S.C. § 546. And when dismissal under Federal Rule 4(m) would effectively result in dismissal with prejudice because of limitations, the Court must apply a heightened standard, requiring more than just a brief delay and aggravating factors on top of that, before dismissal is appropriate. As no extended delay or aggravating factors are present in this case, dismissal under Rule 4(m) would be improper.

38.     Nor would dismissing the Moving Defendants under Federal Rule 4(m) serve to "punish" the plaintiff in this case—the Trustee is asserting claims not for himself but on behalf of the estates' creditors. Stripping the Trustee of the ability to prosecute his claims against the Moving Defendants would serve only to punish the creditors, who would be denied the benefit of any potential recovery from the Moving Defendants, and not the Trustee. The Trustee's counsel's delay in effecting formal service on the Moving Defendants—without more—is not a sufficient reason to allow a subset of investors who profited from McClain's schemes off the hook, while other defendants remain held to account. And here, there is not more.

39.     The Court has broad discretion to grant a retroactive extension of the service deadline, and it should not exercise that discretion to let the Moving Defendants avoid returning preferential transfers, transfers in excess of their investments, or transfers they cannot defend with good faith, to the detriment of other investors. Instead, it should deny the Motions and allow the Trustee to prosecute his claims.

## A. THE COURT HAS BROAD DISCRETION TO EXTEND THE SERVICE DEADLINE.

40.     The rules governing service of the Trustee's complaint afford the Court broad discretion to extend the time within which the complaint must be served. Federal Rule of Bankruptcy Procedure ("**Bankruptcy Rule**") 7004 governs service in an adversary proceeding. In addition to requiring a summons to be served within seven days of issuance, it makes Federal Rule of Civil Procedure ("**Federal Rule**") 4(m) applicable to adversary proceedings. Bankruptcy Rule 7004(a), (e). Federal Rule 4(m) provides further guidance regarding the timing for service:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant **or order that service be made within a specified time**. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period (emphasis added).

41.    "Courts have construed the emphasized language to mean that . . . a court [has] discretionary power to extend the time for service even if the [plaintiff] cannot show good cause." *In re Thompson*, 572 B.R. 638, 658 (Bankr. S.D. Tex. 2017) (citing *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996)). Such courts include the Fifth Circuit, which has explained that when the former Federal Rule 4(j) was amended and recodified as Federal Rule 4(m), it removed the requirement that a party seeking an extension of the service period show good cause. Now, under the current rule, the Court "*must* extend time for service" if good cause is shown, and if it is not, the Court "*may*, in its discretion . . . extend time for service." *Brown*, 91 F.3d at 21 (citation omitted); *see also In re Heritage Org., L.L.C.*, No. 04-35574-BJH-11, 2011 WL 1793327, at *9 (Bankr. N.D. Tex. May 11, 2011) (citation omitted).

42.    Furthermore, where dismissal pursuant to Federal Rule 4(m) would effectively result in dismissal with prejudice (*e.g.*, because limitations would bar a later-filed suit), the Fifth Circuit has explained that "a discretionary extension is particularly warranted." *Id.* (citing *Millan v. USAA General Indem. Co.*, 546 F.3d 321 (5th Cir. 2008)); *In re Thompson*, 572 B.R. at 658 (citation omitted).

## B.  THE COURT'S DISCRETION TO DISMISS BASED ON A SERVICE DELAY IS RESTRICTED WHEN DISMISSAL WOULD EFFECTIVELY BE WITH PREJUDICE.

43.    Indeed, the Fifth Circuit has not only suggested discretionary extensions are particularly appropriate where dismissal would effectively be with prejudice, but it also restricts courts' discretion to dismiss cases under Rule 4(m) in such instances by imposing a "heightened standard used to review a dismissal with prejudice." *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008) (citations omitted) ("[T]his Court has limited district courts' discretion to dismiss claims with prejudice."). This follows not only from Federal Rule 4(m) itself, which expressly provides for dismissal *without* prejudice, but also from the fact that "dismissal with prejudice 'is an extreme sanction that deprives a litigant of the opportunity to pursue his claim.'" *Id.* (citation omitted).

44.     Dismissal with prejudice is therefore "warranted *only* where 'a clear record of delay or contumacious conduct by the plaintiff' exists and a 'lesser sanction would not better serve the interests of justice.'" *Id.* (citations omitted) (emphasis added). Furthermore, the Fifth Circuit has generally upheld such dismissals where at least one of the following aggravating factors exist: "(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." *Id.* Here, none of these requirements are met.

### 1) There was no contumacious delay in serving the Moving Defendants.

45.     As the Moving Defendants admit in their Motions, they were all served with the Trustee's complaint within approximately 150 days of the Trustee commencing this adversary proceeding, rather than the initial 90-days provided for by Federal Rule 4(m). This short delay of approximately two months in effecting service is not nearly long enough to warrant dismissal with prejudice. In the Fifth Circuit, "***delay which warrants dismissal with prejudice must be longer than just a few months;*** instead, the delay must be characterized by 'significant periods of total inactivity.'" *Millan*, 546 F.3d at 326-27 (citation omitted). Unlike the brief, two-month delay in service here, delays warranting dismissal are generally reserved for "egregious and sometimes outrageous delays," which "threaten[] the integrity of the judicial process." *Id.* at 327 (citations omitted). Moreover, the period between the Trustee filing his complaint and service on the Moving Defendants cannot be described as a period of "total inactivity." To the contrary, the Trustee's counsel's was hard at work in this proceeding and related proceedings, both leading up to and after the filing of the complaint, and engaging counsel to arrange for waivers of service. *See infra.*, ¶¶ 21-33.

46.     Most critically, the Trustee's counsel requested summons be issued for certain parties on May 2 and 5, 2025, but no summons were issued at that time by the Court. This process was delayed until July 2, 2025—more than a month after the expiration of the Rule 4(m) 90-day period. While the Trustee's counsel could have more expeditiously sought summonses on or after July 2, 2025, the two-month period between May 2 and 5, 2025, when the Trustee's counsel requested summonses be issued for at least 1/3 of the defendants including some of the Moving Defendants, and when the

Court became available to prepare them again, is approximately equivalent to the overall delay in effecting service on the Moving Defendants and militates against dismissing the Moving Defendants on a technicality in this case. *See United States ex rel. Maharaj v. Estate of Zimmerman*, 427 F. Supp. 3d 625, 654 (D. Md. 2019) (finding that the six-day delay in issuing summons after a qui tam complaint was unsealed militated against dismissal based on the failure to timely serve).

47.    In addition, the Trustee's counsel held numerous conferrals by call and via email over the course of months to confer with the attorneys for the defendants about waiving service in exchange for extending their respective answer deadlines. Importantly, counsel specifically conferred with counsel for all of the Moving Defendants regarding waiving service. On May 15, 2025, counsel asked Mr. Hoard to confirm which of the defendants he was representing in this proceeding.[51] While Mr. Hoard acknowledged he was representing Keith Harris (of Keith Harris Farms, Inc.), Mr. Hoard did not confirm that he was also representing Tyler Pittman, Pittman Farms, Keith Myers, Caleb Little, J&S Investments, Rick Rodgers, Mykel Tidwell, John Tidwell, Eric DeJarnett, Brent Burnett, Noe Birnett, Cory Jesko, Jeff Jesko, Dwight Jesko, Patricia Jesko, Thomas Firth, and TGF Ranch in this proceeding.

48.    Just as the Trustee's counsel's delay in serving the Moving Defendants was not contumacious, there is no evidence of any other contumacious conduct by the Trustee or his counsel. "It is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious; instead, it is the 'stubborn resistance to authority' which justifies a dismissal with prejudice." *Id.* (citation omitted). There was no such conduct here.

49.    After initially telling Judge Jones' coordinator not to immediately issue summons while counsel attempted to obtain waivers of service, the case was transferred to this Court on April 1, 2025. On May 2, 2025, and again on May 5, 2025, well within the initial 90-day service period, the Trustee's counsel emailed to request summons be issued for 51 of the defendants. Furthermore, the Trustee's counsel had been distracted from the issue of effecting formal service in this case given the heavy

---

[51] Exhibit "Z."

workload across related litigation matters that had to be attended to since the commencement of this proceeding and blurred the lines between proceedings, which were also being consolidated during this time period. The Trustee's counsel did not ignore any warnings from the Court regarding service or otherwise purposefully ignore the Court, counsel for other parties, or the applicable rules. In other words, the Trustee's counsel was not acting contumaciously and this factor weighs against dismissal.

### C. THE DELAY IN SERVING THE MOVING DEFENDANTS IS NOT THE TRUSTEE'S FAULT.

50.     As noted above, even where there has been excessive, outrageous delays *and* where a lesser sanction will not suffice, dismissal under Rule 4(m) is generally only appropriate if additional aggravating factors are present. *Millan*, 546 F.3d at 326. One of those factors is whether the plaintiff, rather than his counsel, is responsible for the delay. Here, that is not the case. The Trustee retained and relied on counsel to prosecute the lawsuit. Though the Trustee is also an attorney, attorneys are permitted to retain and rely upon counsel to prosecute lawsuits. Here, it is the Trustee's counsel who is responsible for the delay in service. *Cf. Millan*, 546 F.3d at 327 (finding a *pro se* attorney-plaintiff's delay in serving the defendant resulted from the plaintiff's actions "in his capacity as a lawyer, rather than in his capacity as a litigant"). Accordingly, this factor does not favor granting dismissal because of the brief delay.

### D. THERE IS NO ACTUAL PREJUDICE TO THE MOVING DEFENDANTS.

51.     The second aggravating factor the Court must consider is whether the Moving Defendants would be prejudiced by the delay if there are not dismissed. Here, they would not suffer any unfair prejudice.

52.     Indeed, none of the Moving Defendants even alleged they have suffered any specific prejudice caused by the delay in service. At most, some of the Moving Defendants conclusory allege that they were prejudiced by the delay, though they fail to explain how they were prejudiced. *See, e.g.*, ECF No. 88 ¶ 23 ("Consistent with Fifth Circuit caselaw, the Movant is prejudiced by a delay between the filing of the complaint and service."). Such naked conclusions are unavailing.

53.     Nor are these Moving Defendants' citations to *Gartin v. Par Pharm. Companies, Inc.*, 289 Fed. Appx. 688, 694 (5th Cir. 2008), availing. In *Gartin*, there was a 90-day, not a 60-day, delay in service. *Id.* at 694. Moreover, the plaintiff in *Gartin* ignored the court's notice of pending dismissal, which warned plaintiff the case would be dismissed if not served on all of the defendants and invited plaintiff to seek an extension of time in which to perform service. *Id.* And still, the Fifth Circuit held that its affirmation of the district court's dismissal was a "close case on the district court's exercise of discretion" when the district court refused to extend the time for service. *Id.* at 695.

54.     Here, not only did the Trustee's counsel not ignore any specific warnings about the need to serve defendants, but there are also mitigating circumstances, such as the time that elapsed between the Trustee's counsel's original request for issuance of summons. If the Court substracts this two-month delay from the time since the Original Complaint was filed, the Trustee was delayed in serving the Moving Defendants by only a few days at most. This case is simply not the same as *Gartin*.

55.     Importantly, the Moving Defendants claim no prejudice in that they are forced to litigate claims they were unaware of until the limitations period had run. Nor do they allege that they have destroyed relevant evidence or otherwise had their ability to defend against the Trustee's claims compromised in any way by the brief delay in service.[52] Accordingly, this factor also does not favor dismissal.

### E.  THE DELAY DID NOT RESULT FROM INTENTIONAL CONDUCT.

56.     As to the final aggravating factor generally recognized by the Fifth Circuit—delay caused by intentional conduct—that is not present here. This is an usually large case involving many parties for which the Trustee had little records. The Trustee's counsel originally focused on working hard to confirm representations and obtain waivers of service. Counsel requested summons be issued during the 90-day service period. Counsel was also tied up on many other litigation matters in this

---

[52] All but four of the Moving Defendants are represented by Mr. Hoard, who had the Trustee's First Amended Complaint by no later than May 15, 2025, within the initial 90-day service period. Two other of the Moving Defendants, Stanley Ayers and Garwood Cattle Company, LLC, likewise should have been aware of the Trustee's claims by May 15, 2025, when the Trustee's complaint was emailed to their counsel, Mesrrs. Singleton and Back, who at the time represented two more of the Moving Defendants.

case. These facts do not rise to intentional disregard for the case. *See Millan*, 546 F.3d at 327. Any oversights of counsel are mitigated by the lapse in time between the original requests for summons and summons being issued by the Court. As such, the third and final aggravating factor also does not support dismissal in this case.

57.    Given that the brief, two-month delay in effecting service is not sufficient to support dismissal with prejudice, and given that there are also no aggravating factors that would support dismissal with prejudice, the Court should deny the Moving Defendants' Motions and permit the Trustee to prosecute his claims on behalf of innocent creditors.

## IV.    <u>CONCLUSION AND PRAYER</u>

For these reasons and all those set forth above, the Trustee respectfully requests that the Court:

- Deny the Moving Defendants Motions;

- Order that any outstanding service be completed within three weeks of the date the Court enters an order on the Motions without prejudice to any further extensions based upon an appropriate request; and

- Grant such other and further relief to which the Trustee is entitled at law or in equity.

Respectfully submitted,

*/s/ Alan Dabdoub*
Alan Dabdoub
State Bar No. 24056836
adabdoub@lynnllp.com
Steven G. Gersten
State Bar No. 24087579
sgersten@lynnllp.com
Farsheed Fozouni
State Bar No. 24097705
ffozouni@lynnllp.com
Campbell Sode
State Nar No. 24134507
csode@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:      214-981-3800
Facsimile:      214-981-3839

*/s/ Hudson M. Jobe*
Hudson M. Jobe
Texas Bar No. 24041189
**JOBE LAW PLLC**
6060 North Central Expressway, Suite 500
Dallas, Texas 75206
(214) 807-0563
hjobe@jobelawpllc.com

**SPECIAL COUNSEL TO THE TRUSTEE**